L. J. Sauers Trust, J. H. Sauers, Trustee v. Commissioner. J. H. Sauers v. Commissioner.
Sauers Trust v. Commissioner
Docket Nos. 15194. 17252.
United States Tax Court
1948 Tax Ct. Memo LEXIS 113; 7 T.C.M. (CCH) 575; T.C.M. (RIA) 48158; August 19, 1948
*113 Held, a certain agreement constituted a trust and not a sale of the business; income from the business should be taxed accordingly. Sidney B. Gambill, Esq., Union Trust Bldg., Pittsburgh, Pa., for the petitioners. George C. Lea, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion In Docket No. 15194 respondent determined deficiencies in income tax for the calendar year 1942 in the amount of $1,260.71; in income and victory tax for the calendar year 1943 in the amount of $1,805.55; and income tax for the calendar year 1944 in the amount of $2,221.20. In Docket No. 17252 he determined a deficiency in income and victory tax for the calendar year 1943 in the amount of $2,195.22 and a deficiency in income tax for *114 the calendar year of 1944 in the amount of $2,952.10. Findings of Fact The petitioner, in Docket No. 17252, J. H. Sauers, is an individual with his office at 57 West Main Street, Uniontown, Pennsylvania, and is a son of L. J. Sauers. Prior to December 10, 1941, L. J. Sauers owned and operated a men's clothing and furnishing store in Uniontown, known as "Sauers". In October, 1941, L. J. Sauers suffered a serious heart attack and became thereafter wholly incapacitated. He was advised by his physician that he should retire from business. Following his incapacity due to illness and his enforced retirement, L. J. Sauers called a lawyer (a son-in-law) to his bedside and told him, in effect, that in view of the circumstances he wished to know how he could set up his business so it would continue to be operated by his family and that the family would have the benefit of the operation. He did not wish to sell it because the income from the purchase price would not be large enough to live upon. Various plans were considered and finally the lawyer suggested a trust agreement by which if the son, J. H. Sauers, would agree to hold the property in trust, 40 per cent of the income would be *115 paid to L. J. Sauers, the father, and 60 per cent be retained by his son, with certain provisions to be effective in the event of the death of L. J. Sauers. The lawyer drafted a trust agreement which was submitted to the father and the son, the son not having previously been consulted concerning the matter. After discussing the terms of the agreement, J. H. Sauers agreed to accept the trust and signed the agreement, which was dated December 10, 1941, and was in form as follows: "KNOW ALL MEN BY THESE PRESENTS, "That I, J. H. SAUERS, of North Union Township, Fayette County, Pennsylvania, in consideration of the sum of One Dollar and other valuable consideration to me paid by L. J. SAUERS, SR., the receipt whereof I do hereby acknowledge, and in consideration of the transfer by the said L. J. Sauers, Sr., of all his right, title and interest in and to the business conducted as 'SAUERS', at Uniontown, Fayette County, Pennsylvania, hereby acknowledge and declare that I hold the said business and all its assets in trust for the following uses and purposes, viz: from the date January 1, 1942, to pay over to my father, L. J. Sauers, Sr., forty (40%) per cent of the net income or profit *116 from said business regularly, each month, for and during the term of his life, and upon his death, to pay over said forty (40%) per cent of the net income or profit therefrom, regularly, each month, to my mother, Katherine M. Sauers, for and during the term of her life, and upon her death to pay over in kind annually to each of my brothers and brothers-in-law, merchandise out of the stock of said business, to be by them selected, to the value of seventy-five ($75.00) dollars, for a period of five (5) years from the date of the death of my said mother; and for the further uses and purposes that in the event of the termination of said business for any reason, during the lifetime of my said father to pay over to him a sum equivalent to forty (40%) per cent of the then retail sale value of said business, or in the event of the said termination thereof subsequent to the death of my said father but during the lifetime of my said mother, to pay over to my said mother a sum equivalent to forty (40%) per cent of the then retail sale value of said business; and in the event of the termination thereof subsequent to the death of my said mother the uses and purposes hereinbefore expressed for my *117 said brothers and brothers-in-law shall thereupon terminate. And for the purposes and uses hereinabove expressed and declared I do hereby bind myself, my heirs, executors and administrators. "IN WITNESS WHEREOF, I have hereunto set my hand and seal to this instrument, executed in duplicate, this 10th day of December, A.D. 1941. "s/ J. H. Sauers. (SEAL) "Witness: "s/ R. B. Stauft" The intention of the parties was that 40 per cent of the income from the business was to be paid to L. J. Sauers during his lifetime and to his widow if she survived him and that the remaining portion of the income, or 60 per cent, was to be retained by the son, J. H. Sauers. Following transfer of the business by L. J. Sauers to J. H. Sauers, in trust, J. H. Sauers operated the business and L. J. Sauers never again actively participated therein. J. H. Sauers was in full and complete charge of the business. The net income for the business for the years 1942, 1943 and 1944 and the amounts distributable to each L. J. Sauers and J. H. Sauers are shown in the following table: Net Income
Amount Distributable
Amount Distributable
Year
of Business
to L. J. Sauers
to J. H. Sauers
1942
$11,998.43
$3,799.37
$ 7,199.06
1943
12,836.62
5,134.65
7,701.97
1944
16,988.05
6,795.22
10,192.83
*118 The amounts shown as distributable to L. J. Sauers and J. H. Sauers were reported by each of them in their personal income tax returns for the years 1942, 1943 and 1944. The amounts actually withdrawn by L. J. Sauers and J. H. Sauers were as follows: Amount
Amount
Withdrawn by
Withdrawn by
Year
L. J. Sauers
J. H. Sauers
1942
$4,325.48
$2,340.00
1943
4,824.13
2,710.98
1944
4,026.38
5,425.09
J. H. Sauers had the right and the power to withdraw from the business his full share of the income thereof at any time he saw fit to do so. At the time the trust agreement was under consideration there was no discussion or consideration of a sale between the parties and no sale of the business was effected. Opinion VAN FOSSAN, Judge: In Docket No. 17252 (J. H. Sauers) respondent held, "that on or about December 10, 1941, you purchased the entire assets of the business known as 'Sauers' from L. J. Sauers; and that, therefore, the entire income of the business for each of the years 1942, 1943, and 1944 constitute income taxable to you for income tax purposes." This case will sometimes be referred to as the personal case. In Docket No. 15194 (L. J. *119 Sauers Trust, J. H. Sauers, Trustee) respondent held, "the amount of $9,658.43 representing the net profit as adjusted from the business conducted under the name of 'Sauers' for the year 1942, is pursuant to the trust agreement executed December 10, 1941, properly includable in your gross income." He also determined, "that you are entitled to a deduction of $3,863.37 representing 40% of the net profits from business conducted as 'Sauers' or the amount properly distributable to beneficiary, L. J. Sauers, Sr., for the year 1942, pursuant to trust agreement executed December 10, 1941." Similar findings varying only in the amounts stated were made as to the years 1943 and 1944. This case will sometimes be referred to as the trustee's case. The cases were consolidated for hearing and submitted on a single record. It is obvious that respondent cannot be right in both positions. If there was a sale of the assets to J. H. Sauers as held in Docket No. 17252 (the personal case) then there is no basis for giving effect to the provisions of the trust agreement as was done in Docket No. 15194 (the trustee's case) and respondent is in error in the last mentioned case. If there was no sale of *120 the assets and the trust agreement is to be recognized in the premises, as was done in the trustee's case (No. 15194), then respondent's determination in the personal case is in error and the trust agreement should be recognized and applied in both cases. In that event, a further question arises, i.e., did respondent correctly apply the trust agreement in the trustee's case. The record clearly disproves any contention that there was a sale of the assets. The tenor of the agreement and the testimony of the men who participated in drawing it are conclusive that the intention was to create a trust and that such a result was achieved. It follows that there was no sale and the trust agreement should be recognized as the basis for taxation in both cases. In the trustee's case, respondent recognized the existence of the trust and gave partial effect to its provisions. He allowed as a deduction the 40 per cent of net profits distributable to L. J. Sauers. He did not allow a deduction of the 60 per cent claimed to be distributable to J. H. Sauers, limiting the deduction to amounts actually paid to J. H. Sauers. It is true that the trust agreement does not specifically state that the balance *121 of 60 per cent of profits remaining after distribution of 40 per cent to the father was to be distributable to J. H. Sauers, his son. But the intention of the parties in the drafting of the agreement that the 60 per cent remaining after distribution of the 40 per cent to the father was to be distributable to the son is clearly established by the normal inferences on reading the agreement, by the categorical testimony of the witnesses, by the action of the parties to the agreement and, in fact, by the admission of respondent in his brief where speaking of J. H. Sauers, he states, "The petitioner did not, during any of the taxable years here in question, withdraw from the business the full 60% of the profits derived therefrom, to which he was entitled under the terms of the instrument * * *". We agree with this interpretation of the instrument and that J. H. Sauers was a beneficiary to the extent of the 60 per cent remaining after distribution by him to his father of 40 per cent. The net profits of the business conducted by the trust for the years 1942, 1943, and 1944 are set forth in the findings of fact. Under the terms of the trust agreement, as above construed, these profits *122 were to be divided 40 per cent to L. J. Sauers and 60 per cent to J. H. Sauers. The respondent, as indicated above, allowed a deduction of the 40 per cent distributable to L. J. Sauers but allowed as deduction only the amount shown to have been actually paid to J. H. Sauers. There was no basis for the discrimination. Under section 162 (b) I.R.C., income of a trust which is to be distributed currently to the beneficiaries is allowable as a deduction in computing the net income of the trust whether actually paid or not, provided that such distributable income shall be included in the taxable income of the beneficiaries, whether distributed to them or not. J. H. Sauers was a beneficiary of the trust just as fully as was L. J. Sauers. He was entitled to 60 per cent and L. J. Sauers to 40 per cent of the net profits. As such beneficiary, J. H. Sauers reported the full amount distributable to him in his personal tax returns. Since 100 per cent of the net income of the trust was distributable to beneficiaries and was allowable as a deduction, and since such amounts were reported by the beneficiaries, there is no tax due from the trust. Wherefore, the respondent erred *123 in finding a deficiency due in the trustee's case. Since J. H. Sauers reported all income distributable to him, it follows that there was no additional tax due from him on account of the trust income. Decisions will be entered under Rule 50.